UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| LOIS LANE, a pseudonym, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. |
| | : | |
| BROWN UNIVERSITY and | : | |
| JANE ROE, a pseudonym, | : | |
| Defendants. | : | |

**VERIFIED COMPLAINT**

**Parties**

1.      Plaintiff, Lois Lane[1] ("Plaintiff"), is an individual citizen of New York.

2.      Defendant, Brown University ("Brown"), is a non-profit corporation duly formed and existing under the laws of the State of Rhode Island that operates a private university in Providence, Rhode Island.  Upon information and belief, Brown is a recipient of federal financial assistance and/or other federal funding for research and development within the meaning of Title IX of the Education Amendments of 1972, codified at 20 U.S.C. § 1681 *et seq*. ("Title IX").

3.      Defendant, Jane Roe[2], is an individual citizen of California.

**Jurisdiction and Venue**

4.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 in that Plaintiff seeks redress for violations of their rights arising under the laws of the United States.

5.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy exceeds $75,000.

---

[1] Plaintiff has filed herewith a motion for leave to litigate this action under the pseudonym Lois Lane.

[2] Plaintiff has also maintained the confidentiality of Jane Roe's true identity and will leave it for this Court to decide whether Jane Roe should remain anonymous.

6.      Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 in that Plaintiff's state law claims are so closely related to the federal law claims as to form the same case or controversy.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that substantially all, if not all, of the acts and omissions giving rise to these claims occurred in this judicial district.

## Statement of Facts

8.      In August 2019, Plaintiff[3] and Jane Roe began their freshman year at Brown.

9.      Plaintiff and Jane Roe met on February 14, 2020 at a Zeta Delta Xi Fraternity party.

*The February 15, 2020 Sexual Encounter Between Plaintiff and Jane Roe*

10.     On February 15, 2020, Plaintiff and Jane Roe engaged in consensual sexual contact at Marcy House, a dormitory and fraternity house, on Brown's campus.

11.     All sexual contact between Plaintiff and Jane Roe was consensual with express permission given by Jane Roe.

12.     The February 15, 2020 encounter ended with Plaintiff and Jane Roe expressing an interest to meet again in the future.

13.     Approximately one to two weeks after the February 15, 2020 encounter, Jane Roe initiated a kiss with Plaintiff.

14.     Plaintiff and Jane Roe subsequently maintained non-sexual contact with each other.  Plaintiff and Jane Roe spent casual time together, studied together, and discussed seeking

---

[3] Plaintiff is a transgender female and identifies as they/them/their.

common housing in a dormitory suite together for the following semester.  At no time did Jane

Roe indicate that she was uncomfortable being around or communicating with Plaintiff.

*Jane Roe's Informal Complaint to Harass Plaintiff*

15.     In the Fall of 2020, Jane Roe filed an informal complaint with Brown's Title IX

and Gender Equity Office ("Title IX Office") relating to the February 15, 2020 encounter

("Informal Complaint").  Throughout the Fall of 2020, Plaintiff and Jane Roe lived in separate

dormitory suites near each other in the same building.  Plaintiff was not informed of the Informal

Complaint until January 31, 2021.

16.     According to correspondence from the Title IX Office to Plaintiff, the Informal

Complaint alleged conduct that would constitute prohibited conduct, but that Jane Roe did not

want Brown to take any action against Plaintiff with respect to same.

17.     Plaintiff was shocked to learn of the allegations Jane Roe made against her

because they were so far from the truth and their subsequent interactions were positive.

18.     In the Fall of 2020, both Plaintiff and Jane Roe, along with other students, sought

to join and were pledging the Zeta Delta Xi fraternity (sometimes referred to as "Zete"), which is

located in the Marcy House dormitory on Brown's campus.  On September 15, 2020, a member

of the fraternity contacted Plaintiff to state that "a board in Zete dealing with sensitive cases was

made aware of an incident that has happened within Zete last semester" involving Jane Roe, and

demanded that Plaintiff provide an immediate response to the fraternity.  Plaintiff would not

comply with the unauthorized, inappropriate, and harassing demand from the fraternity member

and withdrew from pledging the fraternity.  Plaintiff has learned that the fraternity conducted

meetings, at which Plaintiff was determined to be excluded and banned from the fraternity and

from contact with its members.

*Brown's Disregard of Plaintiff's Preference for Gender-Neutral Housing*

19.     In January 2021, Brown assigned Plaintiff, a transgender female, housing in a dormitory suite with four male students.  Plaintiff is aware of no indication that any of the four male students were interested in gender-neutral housing.  Plaintiff immediately requested a new housing assignment.  In response to Plaintiff's request to change the inappropriate housing assignment, Brown assigned Plaintiff to a room in a different dormitory.

20.     Prior to the start of freshman year, Plaintiff expressed a preference for and requested gender-neutral housing.  Brown was fully aware in January 2021 of Plaintiff's gender identity but Brown failed to take it into account in its January 2021 housing assignment.

21.     In connection with Plaintiff's request for a new housing assignment in January 2021, Megan Fox, who held the position of Assistant Director of Student Activities at Brown, stated that she would not have placed a cisgender female student in a dormitory suite with males, but she did place Plaintiff there in that case because Plaintiff is a transgender female.

22.     As soon as Plaintiff settled into their new dormitory, they were told by Brown that they needed to relocate again, this time it was due to Jane Roe.

*Jane Roe's Request for and Withdrawal of No-Contact Order to Harass Plaintiff*

23.     On January 31, 2021, Brown's Title IX Program Officer, Rene Davis ("Ms. Davis"), of the Title IX Office contacted Plaintiff, asserting that there was a "housing conflict" and that Jane Roe was demanding "an immediate housing change as an interim support measure" with respect to the Informal Complaint.

24.     On February 1, 2021, Brown issued a No-Contact Order mutually applicable to Plaintiff and Jane Roe ("First No-Contact Order").  For example, the First No-Contact Order included the following statement, which applied to both Plaintiff and Jane Roe: "If you are in the

same space, you should not stare at the other party, gesture towards them, or look in their direction repeatedly or continuously."

25.     Receiving notification of the Informal Complaint and the First No-Contact Order, being assigned to an all-male dormitory, having to relocate to another dormitory, then having Brown demand that Plaintiff change housing again, caused Plaintiff substantial emotional distress and anxiety and was disruptive of their studies.

26.     In an email to Plaintiff dated February 2, 2021, Ms. Davis stated, "I understand from your father that you believe this [Informal Complaint] is a part of ongoing harassment and transphobia by the reporting party.  This is important context for me to have and address going forward."

27.     In an email dated February 3, 2021, Plaintiff reiterated to Ms. Davis that Jane Roe's actions were "harassment and manipulation."  Ms. Davis responded, "I take your concerns regarding your fear associated with past and future harassment seriously. . . . I would absolutely factor in alleged harassment on the part of the reporting party as we finalize this decision, especially if that harassment directly relates to the allegations she reported."  In an email dated February 4, 2021, Ms. Davis further stated, "Again, your references to being harassed are important."

28.     At no time since February 2021 has Brown taken into consideration, investigated or addressed Jane Roe's harassment of Plaintiff or her manipulation of Brown to facilitate the harassment, despite Ms. Davis's promise to do so.

29.     Just as Plaintiff was prepared to make the second housing change that the Title IX Office demanded, Ms. Davis informed Plaintiff that they need not change housing, indicating an apparent change of mind by Brown and/or Jane Roe.

30.     On February 11, 2021, the Title IX Office removed the First No-Contact Order "at the request of the initiator."

31.     While Plaintiff thought those gestures were a positive sign, Plaintiff learned in September 2021 that it was just another manipulative tactic by Jane Roe designed to harass Plaintiff.

32.     Plaintiff had no contact or communications with the Title IX Office or Jane Roe from February 11, 2021 until September 23, 2021.

*Jane Roe's Formal Complaint to Harass Plaintiff*

33.     On September 15, 2021, Jane Roe filed a formal Title IX complaint against Plaintiff based on the February 15, 2020 encounter ("Formal Complaint").

34.     The Formal Complaint includes false and disparaging statements about Plaintiff and the events of the February 15, 2020 encounter.

35.     Plaintiff did not sexually assault Jane Roe as she alleges in the Formal Complaint. All sexual contact between them was consensual with each giving express consent.

36.     Jane Roe filed the Formal Complaint to misuse and manipulate Brown's Title IX procedures, to harass Plaintiff, to inflict emotional distress and other harm on Plaintiff, and to cause Brown and organizations under its purview such as the Zeta Delta Xi Fraternity, Technology House, and other University-sponsored LGBTQ organizations to constructively exclude Plaintiff.

37.     Jane Roe's motive for her actions toward Plaintiff is clear based on several transphobic comments she made to Plaintiff after the February 15, 2020 encounter.  Such transphobic comments involved discounting transgender people as valid partners, especially in

lesbian relationships, and invoking religious principles to explain why people cannot be transgender or they would be punished in some divine way.

*Jane Roe's Harassment of Plaintiff Through the Informal Resolution Process*

38.     On or about January 24, 2022, Plaintiff asked Brown's Assistant Vice President of Equal Opportunity and Diversity, Juana De Los Santos ("Ms. De Los Santos") to inquire whether Jane Roe would be interested in participating in Brown's informal resolution process.

39.     Brown's informal resolution process is an alternative means available to resolve the Formal Complaint.  It is conducted by Brown if both parties agree to participate in it.  If the matter is resolved by mutual agreement of the parties, the Formal Complaint is considered resolved and closed.  If the parties are unable to reach an agreement, the formal resolution process is resumed.

40.     On February 2, 2022, Ms. De Los Santos emailed Plaintiff to inform them that Jane Roe was also interested in pursuing the informal resolution process.

41.     On February 3, 2022, Ms. De Los Santos sent Plaintiff an email with the "Guiding Procedure" for the process.  Ms. De Los Santos explained that she "will review the proposed terms and will remove those terms that are not permissible under University policy or practice and/or federal or state law" and that she "may consult with relevant University officials, as appropriate, when determining the permissibility of a proposed terms(s)."

42.     Ms. De Los Santos's email also "reminded that retaliation is prohibited at the University" and defined retaliation as "any action, statement, or behavior meant as reprisal or retribution against an individual in response to the individual's good faith report or participation in a proceeding related to this policy, including the informal resolution process" which "includes,

but is not limited to, intimidation, threats, harassment, and other conduct that would discourage a reasonable person from engaging in activity protected under this policy."

43.     Plaintiff participated in the informal resolution process in good faith.  However, the process was not successful because neither Jane Roe nor Brown participated in good faith. Jane Roe had no intention of informally resolving the Formal Complaint.  Instead, Jane Roe saw it as an opportunity to retaliate against Plaintiff and to inflict more harm on Plaintiff.  The process only caused further harm to Plaintiff and further delayed Brown's investigation of the Formal Complaint.

44.     Jane Roe's proposed terms and consequences for the informal resolution process were outrageous and nothing more than a vitriol-filled list of demands intended to further harass Plaintiff.  See Jane Roe's Informal Resolution Proposal, attached as **Exhibit 1**.

45.     When Ms. De Los Santos sent Plaintiff Jane Roe's informal resolution proposal on February 15, 2022, she chose, for unknown reasons, to send the proposal in Jane Roe's own words.  See **Exhibit 1**.  Ms. De Los Santos was deliberately indifferent to the fact that Jane Roe was using the informal resolution process to retaliate against and harass Plaintiff.

46.     Ms. De Los Santos could have and, according to the Guiding Procedures, should have recognized Jane Roe's proposed terms as retaliatory and only conveyed to Plaintiff that an informal resolution would require Plaintiff to leave Brown.  There was no legitimate reason for Ms. De Los Santos to use Jane Roe's own words to inflict further harm on Plaintiff, and Ms. De Los Santos acted contrary to Brown's own policies and the Guiding Procedure.

47.     Plaintiff immediately withdrew from the informal resolution process and complained to Ms. De Los Santos about Jane Roe's manipulation of Brown to harass them.

*Brown's Deliberate Indifference to Jane Roe's Gender-Based Harassment of Plaintiff*

48.     Jane Roe was manipulating Brown to facilitate her continued harassment of Plaintiff and Brown did so without question or hesitation, which evidences Brown's deliberate indifference toward Jane Roe's gender-based harassment of Plaintiff.

49.     In transmitting the Formal Complaint against Plaintiff on September 23, 2021, the Title IX Office issued a second No-Contact Order applicable to Plaintiff and Jane Roe ("Second No-Contact Order").  The Second No-Contact Order was not mutual in its application to Plaintiff and Jane Roe, and in fact, imposed limitations on Plaintiff's behavior that were not equally applicable to Jane Roe.  For example, the Second No-Contact Order stated, "The following terms apply only to the Respondent. . . . If you are in the same space, you should not stare at the other party, gesture towards them, or look in their direction repeatedly or continuously."  The Second No-Contact Order remains in place as of the filing of this action.

50.     The one-sided Second No-Contact Order discriminated against Plaintiff for no reason other than to allow Jane Roe's continued harassment of Plaintiff due to their being a transgender female.  The First No-Contact Order was mutual and nothing had transpired between Plaintiff and Jane Roe since it was withdrawn to justify a one-sided no-contact order in September 2021.

51.     The Title IX Office commenced its investigation of the Formal Complaint without having considered the circumstances surrounding the Informal Complaint, Jane Roe's manipulative tactics over the prior year, or "any historical documents."  For example, Brown initiated the Title IX investigation against Plaintiff in spite of Jane Roe's filing of the Informal Complaint without requesting any action be taken, requesting then withdrawing the First No-Contact Order, demanding Brown relocate Plaintiff to other housing, withdrawing the demand

for Brown to relocate Plaintiff, and filing the Formal Complaint nineteen (19) months after the February 15, 2020 encounter.

52.     At no time has Brown considered, investigated, or addressed Jane Roe's calculated harassment of Plaintiff, as Ms. Davis promised in connection with the Informal Complaint.

53.     On February 16, 2022, Plaintiff encountered Jane Roe in the hallway of an academic building on campus.  Jane Roe stared down Plaintiff as Plaintiff proceeded along the hallway, harassing Plaintiff in person.  Jane Roe's conduct would have violated the First No-Contact Order, but was not prohibited by the Second No-Contact Order, which placed restrictions on Plaintiff that were not applicable to Jane Roe.

54.     Brown's unending investigation of the Formal Complaint is not only allowing Jane Roe to continually harass and cause irreparable harm to Plaintiff, it is enabling and facilitating Jane Roe to harass Plaintiff.

55.     Brown has provided no effective support to Plaintiff for Jane Roe's harassment, despite Plaintiff repeatedly and consistently reporting Brown's inadequate student support services to the Title IX Office.

56.     On February 24, 2022, Plaintiff received a message from an officer at Technology House (sometimes referred to as "Tech House"), a dormitory and on-campus organization, where Plaintiff is a member and Projects Manager.  The message informed Plaintiff that someone from Zeta Delta Xi Fraternity brought to the attention of Technology House that Plaintiff has an ongoing Title IX investigation.  The message further states that Technology House then met with a Brown dean to discuss the matter and was advised by the dean to ask Plaintiff to step down as Projects Manager until the investigation is concluded.

57.     Plaintiff's affiliation with Technology House is mostly private as is the Formal Complaint.  Jane Roe is one of the very few individuals at Brown who should know about both. Upon information and belief, Jane Roe disclosed or caused the disclosure to Technology House the ongoing Title IX investigation to further harass Plaintiff.

58.     One of the demands Jane Roe included in her informal resolution proposal was for Plaintiff to "formally withdraw from organized student groups like Tech House, . . ."  See **Exhibit 1**.

59.     It is no coincidence that Technology House was made aware of the ongoing Title IX investigation just days after Plaintiff rejected Jane Roe's vile informal resolution proposal and withdrew from the informal resolution process.

60.     On February 24, 2022, Plaintiff sent a letter to Ms. De Los Santos detailing the continued harassment by Jane Roe and demanding that Brown stop same.

61.     Jane Roe has baselessly and unlawfully poisoned and interfered with all on-campus social and living groups in which Plaintiff had been involved, including Technology House, in which Plaintiff has had dormitory housing since September 2021, and the Zeta Delta Xi fraternity.  Jane Roe has caused members of these organizations to shun and exclude Plaintiff and assume that Plaintiff is guilty of an infraction of which they never should have been aware in the first place.  Brown's campus has become a dangerous place for Plaintiff, and Plaintiff does not feel safe living in a Brown dormitory or eating in a Brown dining hall.  On February 26, 2021, Plaintiff vacated their on-campus dormitory and moved to off-campus housing.

62.     Brown has unlawfully discriminated against Plaintiff based on their being a transgender female and has shown a deliberate indifference to Jane Roe's gender-based harassment of Plaintiff.  For example, Brown assigned Plaintiff to an all-male dormitory in

January 2021 with knowledge of Plaintiff's gender-neutral housing preference and transgender

status, allowed, enabled and facilitated Jane Roe to harass and manipulate Plaintiff by having

Brown make demands of Plaintiff and then withdraw those demands, issued the Second No-

Contact Order with terms applicable to only against Plaintiff, unduly delayed its investigation of

the Formal Complaint for more than five months with no end in sight, and had a dean

recommend that Plaintiff step down from their position as Projects Manager at Technology

House due to the ongoing (and unending) Title IX investigation.

_Plaintiff's Contractual Right to Submit a Written Statement and For a Prompt Hearing_

63.     When Plaintiff matriculated as a student at Brown in the Fall of 2019, Brown had

in effect the following Title IX procedure:  ***Complaint Process Pursuant to the University Sexual***

***and Gender-Based Harassment, Sexual Violence, Relationship and Interpersonal Violence and***

***Stalking Policy*** ("2019 Title IX Procedure").[4]

64.     Section VIII.A.8 of the 2019 Title IX Procedure expressly provides in pertinent

part:

> The parties may submit a written statement to be considered by the hearing
> panel. The written statement must be submitted twenty-four (24) hours
> before the scheduled hearing.

65.     Brown also had in effect when Plaintiff matriculated ***Student Conduct***

***Procedures 2019-2020*** ("2019 Non-Title IX Procedure").

66.     The 2019 Non-Title IX Procedure provides the process to investigate and resolve

alleged violations of the Code of Student Conduct.  The Code of Student Conduct defines

prohibited student conduct involving non-sexual offenses such as cheating, drugs, theft,

misrepresentation or alcohol.  The 2019 Non-Title IX Procedure refers to the 2019 Title IX

---

[4] The 2019 Title IX Procedure was last updated in 2016 but was the version in effect in 2019 when Plaintiff matriculated.

Policy for offenses involving relationship or dating violence, sexual assault or sexual harassment. The 2019 Non-Title IX Procedure also provides its own procedures for adjudicating non-sexual offenses. In Section 4, it states under Student Rights and Responsibilities:

> **Respondent Rights.** Students and student groups are afforded the following rights in Student Conduct proceedings:
>
>           *     *     *     *     *
>
> G. . . . (Students have the right to prepare a written statement in matters that may result in separation from the University.)

67.     Plaintiff was provided copies of the 2019 Title IX Procedure and the 2019 Non-Title IX Procedure during a sexual assault prevention program during orientation and had to acknowledge receipt of the procedures.

68.     At the time of Plaintiff's matriculation at Brown, they had a reasonable expectation of the rights to which Brown promised to afford them, including the right to submit a written statement to a hearing panel if they became the subject of a Title IX complaint, or the subject of any other student misconduct complaint so long as the discipline to be imposed could result in separation from Brown.

69.     The 2019 Title IX Procedure is the operative contract between Plaintiff and Brown as to how Title IX formal complaints made against Plaintiff while a student at Brown must be investigated, heard and decided, including the time frame within which all of it is completed.

70.     Plaintiff has not received any notice from Brown as to any proposed modification to those procedures or anything else from Brown that might alter Plaintiff's reasonable expectation of the rights to be afforded them in the event they became the subject of a Title IX complaint or other student misconduct complaint while a student at Brown.

71.     The 2019 Title IX Procedure also states in Section X that Brown "ordinarily will seek to complete its investigation and disciplinary process, if any, within sixty (60) days. . . . The

University's overarching goal is that all Complaints be investigated in a prompt, fair, and impartial manner."

72.     Plaintiff appreciates that Brown did not expressly promise to complete the investigation and disciplinary process of all Title IX complaints within 60 days.  However, Plaintiff reasonably expected, based on Brown's promise for a prompt investigation and its own estimated time frame of 60 days to complete the entire process, that under no circumstances would Brown be in the midst of its investigation more than 150 days after the Formal Complaint was filed.  Brown's investigation of the Formal Complaint has been anything but prompt.

*Brown's Deprivation of Plaintiff's Right to Submit a Written Statement*

73.     Brown sent a Written Notice of Formal Complaint to Plaintiff informing them that they are alleged to have engaged in prohibited conduct in violation of the ***Sexual and Gender-Based Harassment, Sexual Violence, Relationship and Interpersonal Violence and Stalking Policy*** ("2019 Title IX Policy")[5] and that Brown will use the ***Sexual and Gender-Based Misconduct Complaint Procedure*** ("2021 Non-Title IX Procedure") to resolve the allegations in the Formal Complaint.

74.     In February 2021, Brown adopted the ***Sexual and Gender-Based Misconduct Policy*** ("2021 Non-Title IX Policy") and the 2021 Non-Title IX Procedure in response to the Department of Education's ("DOE") new Title IX rules which went into effect August 14, 2020 ("DOE's 2020 Title IX Rules").

75.     The DOE's 2020 Title IX Rules narrowed the definition of "sexual harassment" and excluded some off-campus sexual and gender-based misconduct from the jurisdictional scope of Title IX.  As a result, colleges and universities nationwide, including Brown, adopted

---

[5] The 2019 Title IX Policy was last updated in 2016 but was the version in effect in 2019 when Plaintiff matriculated and at the time of the alleged sexual assault.

new policies and procedures for classifying and adjudicating sexual and gender-based misconduct that falls outside the purview of Title IX.  Brown also adopted in February 2021 a new Title IX policy, ***Sexual and Gender-Based Harassment, Sexual Assault, Intimate Partner Violence, and Stalking Policy*** ("2021 Title IX Policy"), and a new Title IX procedure, ***Title IX Grievance Procedure*** ("2021 Title IX Procedure"), to comply with DOE's 2020 Title IX Rules.

76.     Plaintiff became justifiably confused and concerned about Brown's decision to follow a new procedure that denies them of their contractual right to submit a written statement to the hearing panel in advance of the misconduct hearing.  Even more concerning was Brown's insistence on following the 2021 Non-Title IX Procedure to adjudicate an allegation of sexual assault that occurred on campus.  The allegation in the Formal Complaint indisputably falls within the jurisdictional scope of Title IX under either DOE's 2020 Title IX Rules or the older, broader Title IX rules.

77.     On November 2, 2021, Plaintiff sent an email to Ms. De Los Santos raising their concern about Brown's choice of procedure and looking for some answers.

78.     On January 24, 2022, Plaintiff attended a meeting with Ms. De Los Santos in which Brown's curious choice of procedure was discussed.  Plaintiff left the meeting with no better understanding of Brown's rationale for insisting on following a non-Title IX procedure that was not in effect when Plaintiff matriculated and formed a reasonable expectation of the rights to be afforded them in this situation.  Ms. De Los Santos attempted to summarize the meeting for Plaintiff with the following cryptic explanation:

> In our meeting, I mentioned that in May 2020 the Department of Education released Title IX regulations. The effective date of those regulations was August 14, 2020. Within them, the Department of Education stated that the new Title IX policies and procedures (implemented after August 14, 2020) would not cover any conduct that took place prior to August 2020. Since your alleged misconduct happened in February 2020, the University would

use the policy that was active during the time of the alleged conduct and the *current applicable procedures* at the time in which the formal complaint was filed.

79.    Brown's arbitrary and capricious decision to follow the procedure in effect at the time a student misconduct complaint is filed wholly ignores that the accused student may have a reasonable expectation under contract law as to specific promises Brown made to them in its student misconduct procedures.  Here, Brown promised to afford Plaintiff the right to submit a written statement to a hearing panel in advance of a student misconduct hearing.  The promise was expressly contained in the 2019 Title IX Procedure and the 2019 Non-Title IX Procedure.

80.    Brown's refusal to afford Plaintiff this contractual right constitutes a breach of contract.

81.    Brown is also ignoring the language in its own procedures to reach the result it wants to achieve.  The 2021 Non-Title IX Procedure that Brown insists on following to investigate and adjudicate whether Plaintiff violated the 2019 Title IX Policy in February 2020 explicitly states that it does not apply to such matters.  The 2021 Non-Title IX Procedure states:

> Exempt from these procedures is Prohibited Conduct defined in the Sexual and Gender-Based Harassment, Sexual Assault, Interpersonal Violence, and Stalking Policy [the 2021 Title IX Policy].

82.    If the 2021 Non-Title IX Procedure is not to be used to adjudicate conduct prohibited by the 2021 Title IX Policy, it cannot be used to adjudicate conduct prohibited by the 2019 Title IX Policy.

83.    Under the 2021 Non-Title IX Procedure that Brown insists on following, Plaintiff is limited to making a verbal statement to the hearing panel that cannot exceed seven (7) minutes in length.  Plaintiff must verbally summarize the evidence and present their defense in seven minutes.

84.     Plaintiff has no right to counsel at the hearing.  Plaintiff must personally make the verbal presentation.  Plaintiff is allowed to have an advisor present at the hearing.  However, the advisor cannot speak and must act as nothing more than a potted plant in the room.  This is in stark contrast to the right Brown promised Plaintiff in 2019 to submit a written statement to a hearing panel in advance of a student misconduct hearing.

85.     If Plaintiff is wrongfully adjudicated to be responsible because they were denied their contractual right to a fair opportunity to present their defense, the harm will be irreparable.  There is no right to a *de novo* appeal or judicial review.  The 2019 Title IX Procedure, Section VIII.D, allows Plaintiff to appeal the hearing panel's determination only:

> on the limited grounds of (1) substantial procedural error that materially affected the outcome; (2) material, new evidence not reasonably available at the time of the hearing; (3) a decision and/or sanction that is clearly contrary to the weight of the evidence.

*Brown's Deprivation of Plaintiff's Right to a Prompt Hearing*

86.     As of the filing of this Complaint, more than 150 days (or five months) have passed since the Formal Complaint was filed and Brown is still in the midst of its investigation with no end in sight.

87.     Brown's procedures for conducting Title IX and other student misconduct investigations impose strict deadlines and limitations on requests for extensions of time by respondents, but not for Brown.

88.     No complex or unique factors exist in this case to justify Brown's failure to have conducted its Title IX investigation of the Formal Complaint promptly and without undue delay. The investigation is still in the early stages, and Brown has already taken more than 150% additional time than it estimated to compete the entire disciplinary process.  Brown has not

provided any justification to Plaintiff for such a lengthy and unreasonable delay. There is no

justification for the undue delay.

89.     Ms. De Los Santos provided the following statement to Plaintiff in an email dated

September 27, 2021:

> Extensions.   A Complainant and/or Respondent may ask for an extension
> to a deadline or to pause the investigation.  Pauses and/or extension are only
> provided for good cause and are normally a three- to five-day extension.
> Good cause is considered to be extraordinary or extenuating circumstances
> outside of the control of the party such as an unanticipated health issue or
> exam or deadline associated with an academic assignment. . . . .

90.     On September 27, 2021, the Title IX Office informed Plaintiff that a third-party

investigator ("Investigator") had been appointed to investigate the Formal Complaint.

91.     On or about November 11, 2021, the Investigator contacted Plaintiff for the first

time, seeking to set up an interview "to gather more information."  The Investigator met with

Plaintiff to conduct the requested interview on November 30, 2021.

92.     In an email to Ms. De Los Santos dated February 15, 2022, Plaintiff asked for "a

reliable timeline for whatever remains to bring this matter to a conclusion."  Plaintiff did not

receive an answer to this question.

93.     In an email dated February 21, 2022, the Investigator informed Plaintiff, through

their attorney, that "I am currently interviewing witnesses.  I anticipate that I will reach back out

to the parties to schedule final interviews in the next couple of weeks."

94.     Separate from the 2019 Title IX Procedure, Section 2.9.5 of the 2021 Title IX

Procedure approximates the time associated with the major stages of the process as follows:

- Investigation – Thirty (30) business days
- Draft Report Review – Ten (10) business days from delivery of the draft report
- Finalize the Investigation Report – Five (5) business days
- Hearing Panel Report Review – Ten (10) business days
- Hearing Panel Deliberation – Five (5) business days

- Right of Appeal – Five (5) business days from the delivery of the written outcome

95.     Even if Brown were to promptly complete its investigation and the remainder of the disciplinary process from this point forward according to the time frame set forth in the 2021 Title IX Procedure, that would result in the hearing being scheduled during Plaintiff's final exams in early May.

96.     Brown has no legitimate excuse for failing to complete its investigation of the Formal Complaint in the Fall Semester of 2021 and continues to unduly delay completion of the investigation with no end in sight.

97.     Brown's inexcusable failure to timely complete the Title IX investigation against Plaintiff has allowed Jane Roe to continue to harass Plaintiff, including with respect to the incident involving Technology House beginning on February 23, 2022.

98.     Brown's delay in conducting its Title IX investigation of the Formal Complaint and Brown's treatment of Plaintiff in response to the Formal Complaint is causing substantial, ongoing, and increasing emotional distress and anxiety to Plaintiff and is increasingly disruptive of Plaintiff's studies.  The inexcusably delayed Title IX investigation, which commenced on September 15, 2021, is detrimental to Plaintiff's well-being and has resulted in Plaintiff's deteriorating mental and physical health.

99.     As evidence of the concrete harm caused by Jane Roe's discriminatory harassment and Brown's deliberate indifference to the harassment, Plaintiff was forced to move to an off-campus apartment on February 26, 2022 because they no longer feel safe living on Brown's campus.  If Brown had promptly completed its investigation of the Formal Complaint in the Fall of 2021, Jane Roe would no longer be armed with the fact that Plaintiff is the subject of an ongoing Title IX investigation in March 2022.

**COUNT I**
**Breach of Contract**
**(Against Brown)**

100.    The prior paragraphs are incorporated by reference as if fully set forth herein.

101.    The 2019 Title IX Procedure constitutes a binding contract between Plaintiff and Brown that requires Brown to afford Plaintiff, in connection with the Formal Complaint, the right (i) to a fair and prompt investigation and hearing process, and (ii) to submit a written statement to a hearing panel in advance of any hearing.

102.    Brown breached its contract with Plaintiff by, among other things, unduly delaying without justification the investigation and hearing process for the Formal Complaint and refusing to allow Plaintiff to submit a written statement to the hearing panel in advance of the hearing.

103.    Plaintiff fulfilled all of their contractual obligations or was otherwise excused from doing so under the circumstances.

104.    As a proximate result of Brown's breaches, Plaintiff has and will incur substantial damages and harm, including irreparable harm.

**COUNT II**
**Breach of the Covenant of Good Faith and Fair Dealing**
**(Against Brown)**

105.    The prior paragraphs are incorporated by reference as if fully set forth herein.

106.    The contract between Brown and Plaintiff includes an implied covenant of good faith and fair dealing under Rhode Island law.

107.    Brown has breached this implied covenant by, among other things, unduly delaying without justification the investigation and hearing process for the Formal Complaint

and refusing to allow Plaintiff to submit a written statement to the hearing panel in advance of the hearing.

108.   As a proximate result of Brown's breaches, Plaintiff has and will incur substantial damages and harm, including irreparable harm.

**COUNT III**
**Hostile Education Environment in Violation of the**
**Educational Amendments of 1972 (Title IX) 20 U.S.C. § 1681** *et seq.*
**(Against Brown)**

109.   The prior paragraphs are incorporated by reference as if fully set forth herein.

110.   Title IX prohibits Brown from discriminating against Plaintiff based on sex, including on the basis of being a transgender female, in connection with any educational program or activity.

111.   Plaintiff has been the victim of severe, pervasive, and objectively offensive sexual harassment and gender-based discrimination by Jane Roe, a school peer.

112.   The gender-based discrimination and harassment has caused Plaintiff to be deprived of educational opportunities and benefits.

113.   "Sexual harassment" is discrimination based on sex in the school context that is actionable under Title IX, which can include student-on-student sexual harassment if sufficiently severe.  See *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 650 (1999).

114.   Brown has had actual knowledge of the gender-based discrimination and harassment Plaintiff has been forced to endure at the hands of Jane Roe while Plaintiff tried to engage in Brown's educational programs and activities.

115.   Ms. De Los Santos is a Brown official with authority to implement corrective measures who is fully aware of the gender-based discrimination and harassment Plaintiff is experiencing at the hands of Jane Roe.  Ms. De Los Santos has been deliberately indifferent to

the discrimination and harassment that Plaintiff brought to her attention.  Ms. De Los Santos'

failure to respond or take any corrective or remedial measures made Plaintiff vulnerable to the

discrimination.

116.    Brown's lack of a response to the gender-based discrimination and harassment

Plaintiff has and continues to endure and has brought to Brown's attention is clearly

unreasonable in light of the known circumstances and shows Brown's deliberate indifference to

the discrimination and harassment of Plaintiff.

117.    As a direct and proximate result of Brown's discriminatory acts and practices

detailed above that were sufficiently severe to interfere with Plaintiff's ability to participate in

and enjoy the benefits of the educational services offered by Brown, and as a direct and

proximate result of Brown's deliberate indifference to Plaintiff's right to be free from

discrimination based on sex, Plaintiff was and continues to be denied access to a safe and secure

educational environment in violation of Title IX, and has and will incur substantial damages and

harm, including irreparable harm.

**COUNT IV**
**Injunctive Relief**
**(Against Brown)**

118.    The prior paragraphs are incorporated by reference as if fully set forth herein.

119.    As a matter of equity and to prevent further irreparable harm to Plaintiff, this

Court should issue a temporary restraining order and mandatory injunction ordering Brown to

cease its investigation and take no disciplinary action against Plaintiff in connection with the

Formal Complaint and/or the February 15, 2020 encounter or, in the alternative, to (i) complete

its investigation of the Complaint promptly and without further undue delay, (ii) schedule

Plaintiff's student misconduct hearing promptly upon completion of the investigation, (iii) follow

the 2019 Title IX Procedure for the student misconduct hearing which affords Plaintiff the right

to submit a written statement to the hearing panel in advance of the hearing, and (iv) not

discriminate or retaliate against Plaintiff based on being a transgender person or for pursuing

their rights in this action.

### COUNT V
**Defamation**
**(Against Jane Roe)**

120.     The prior paragraphs are incorporated by reference as if fully set forth herein.

121.     Jane Roe made false and disparaging statements about Plaintiff to third parties,

including but not limited to the statement that Plaintiff sexually assaulted her on February 15,

2020.

122.     Jane Roe made the false and disparaging statements negligently, from spite, ill

will or culpable recklessness, or with willful or wanton disregard of Plaintiff's rights and

interests.

123.     The false and disparaging statements are disgraceful, humiliating and degrading

to Plaintiff.

124.     A reasonable person in society would find the false and disparaging statements to

be disgraceful, humiliating and degrading to a person's reputation in the community.

125.     The false and disparaging statements impute conduct that is injurious to Plaintiff's

reputation in the social and college community.

126.     A reasonable person in society would find the false and disparaging statements to

be injurious to a person's reputation in the community both socially and in college.

127.     Jane Roe was not privileged to make the false and disparaging statements.

128.     Jane Roe's conduct amounts to criminality which for the good of society and

warning to her, ought to be punished by an award of exemplary damages.

129.     As a proximate result of Jane Roe's conduct, Plaintiff has and will incur substantial damages and harm.

## COUNT VI
### Defamation *Per Se*
### (Against Jane Roe)

130.     The prior paragraphs are incorporated by reference as if fully set forth herein.

131.     Jane Roe's false and disparaging statements are defamatory by their very nature and meaning such that harm to Plaintiff can be inferred from the character of the words because they wrongly accuse them of sexual assault which is a criminal offense.

132.     As a proximate result of Jane Roe's conduct, Plaintiff has and will incur substantial damages and harm.

## COUNT VII
### Intentional Infliction of Emotional Distress
### (Against Jane Roe)

133.     The prior paragraphs are incorporated by reference as if fully set forth herein.

134.     Jane Roe's manipulative, discriminatory and harassing conduct toward Plaintiff is outrageous in character, so extreme in degree that it exceeds all bounds usually tolerated in a decent society, and of a nature especially calculated to cause the emotional distress that resulted.

135.     The emotional distress suffered by Plaintiff resulted in objectively measurable physical symptoms.

136.     As a proximate result of Jane Roe's conduct, Plaintiff has and will incur substantial damages and harm, including sever emotional distress.

**COUNT VIII**
**Invasion of Right to Privacy/False Light**
**in Violation of R.I. Gen. Laws § 9-1-28.1(a)(4)**
**(Against Jane Roe)**

137.     The prior paragraphs are incorporated by reference as if fully set forth herein.

138.     At all relevant times, Plaintiff had the right to be secure from publicity that reasonably places them in a false light before the public.

139.     Jane Roe has published false and disparaging statements to fellow students at Brown, Zeta Delta Xi Fraternity, Technology House and other University-sponsored LGBTQ organizations that implies Plaintiff is a sexual predator and associated with students banned from such organizations.

140.     The association implicit in Jane Roe's false and disparaging statements would be objectionable to the ordinary reasonable person under the circumstances.

141.     The association implicit in Jane Roe's false and disparaging statements is objectionable, disgraceful, humiliating and degrading to Plaintiff.

142.     As a proximate result of Jane Roe's conduct, Plaintiff has and will incur substantial damages and harm.

**WHEREFORE**, Plaintiff prays that a judgment for the following relief be entered in their favor and against Defendants for:

(a)     compensatory damages to include, without limitation, economic harm, injury to physical well-being and injury to mental and emotional well-being, injury to reputation, in an amount to be determined by the trier of fact at trial, but which is in excess of $75,000;

(b)     a temporary restraining order and mandatory injunction ordering Brown to cease its investigation and take no disciplinary action against Plaintiff in connection with the Formal Complaint and/or the February 15, 2020 encounter or, in the alternative, to (i) complete its

investigation of the Complaint promptly and without further undue delay, (ii) schedule Plaintiff's

student misconduct hearing promptly upon completion of the investigation, (iii) follow the 2019

Title IX Procedure for the student misconduct hearing which affords Plaintiff the right to submit

a written statement to the hearing panel in advance of the hearing, and (iv) not discriminate or

retaliate against Plaintiff based on being a transgender person or for pursuing their rights in this

action;

      (c)     reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) and R.I. Gen. Laws §

9-1-28.1(b) and costs;

      (d)     punitive damages; and

      (e)     such other and further relief as the Court deems just and proper.

> LOIS LANE,
> Plaintiff,
> By their Attorneys,
>
>
> /s/ Stephen J. Brouillard
> Stephen J. Brouillard, Esq. #6284
> Bianchi Brouillard Sousa & O'Connell, P.C.
> 56 Pine Street, Suite 250
> Providence, RI 02903
> (401) 223-2990 *telephone*
> (877) 548-4539 *facsimile*
> sbrouillard@bbsolaw.com
>
> and
>
>
> /s/ John R. Grasso
> John R. Grasso, Esq. #7495
> Law Office of John R. Grasso, Inc.
> 72 Clifford Street, 3rd Floor
> Providence, RI 02903
> (401) 272-4001 *telephone/facsimile*
> jrg@grassolaw.com

Dated: March 2, 2022

**Verification of Allegations**

_Lois Lane_

Lois Lane (a pseudonym)

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence, Rhode Island on the 2nd day of March, 2022, before me personally appeared Plaintiff, an individual whose true identity is known by me but has signed this Verified Complaint pseudonymously as Lois Lane, who made oath that they subscribed to the foregoing Verified Complaint, that they know the contents thereof and that the same are true, excepting those matters stated on information and belief, and as to those matters, they believe them to be true.

Notary Public: 75 8673
My Commission Expires: 9-17-2025

**Plaintiff's Verification of Allegations and attestation to same in their true name are contained on the next page of this Verified Complaint along with Jane Roe's true identity. The next page is being served on Defendants but not filed with the Court subject to this Court's determination of Plaintiff's Motion for Leave to Litigate Under a Pseudonym.**